AO 132 (Rev. 09/06) Exemplification Certificate

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

## EXEMPLIFICATION CERTIFICATE

I, KINIKIA D. ESSIX, Clerk of the United States District Court, keeper of the records and seal, certify that the attached documents are true copies of the records of this Court.

| First State Trust Company v. Weld | Case No. 20-11612 |
|---|---|
| Consent Judgment | |

In testimony whereof I sign my name and affix the seal of this Court, in this District, at

Detroit, Michigan    ON    December 16, 2024

KINIKIA D. ESSIX, Clerk of Court

_M. Sylvester_
Deputy Clerk

I, Jonathan J.C. Grey, a judicial Officer of this Court, certify Kinikia D. Essix, named above, is and was on the date noted, Clerk of this Court, duly appointed and sworn, and keeper of the records and seal, and that this certificate, and the attestation of the record, are in accordance with the laws of the United States.

December 16, 2024
Date

_Jonathan J.C. Grey_
Signature of Judicial Officer

U.S. District Court Judge
Title

I, Kinikia D. Essix, Clerk of the United States District Court, keeper of the records and seal, certify that the Honorable Jonathan J.C. Grey, named above, is and was on the date noted a Judicial Officer of this court, duly appointed, sworn and qualified, and that I am well acquainted with the Judicial Officer's official signature and know and certify the above signature to be that of the Judicial Officer.

Theodore Levin U.S. Courthouse
In testimony whereof I sign my name, and affix the seal of this Court at 231 W. Lafayette Boulevard

Detroit, Michigan 48226    in this State on    December 16, 2024

KINIKIA D. ESSIX, Clerk

_M. Sylvester_
Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIRST STATE TRUST COMPANY,

        Plaintiff,

v.

WILLIAM F. WELD,

        Defendant.

        Case No. 2:20-cv-11612

HONORABLE STEPHEN J. MURPHY, III

I hereby certify that the foregoing is a true copy of the original on file in this Office.
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
BY: M. Sylvester
        Deputy

## CONSENT JUDGMENT

Plaintiff First State Trust Company, as trustee of the Howard A. Acheson Trust FBO Michael H. Acheson UTA May 5, 1973 ("Plaintiff") and Defendant William F. Weld ("Defendant") having entered into a Settlement Agreement and side letter dated February 17, 2021, attached as Exhibit A and incorporated herein, (collectively, the "Settlement Agreement") and upon consent of the parties and with the Court being fully advised:

**IT IS ORDERED, ADJUDGED AND DECREED** that:

1. Judgment is entered in favor of Plaintiff and against Defendant in the amount of $2,257,923.50 (consisting of $2,000,000 of principal ("Principal"), $148,493.15 of unpaid interest on the Principal through December 31, 2020, and $109,403.35 of legal fees and expenses). From January 1, 2021, interest on the Principal shall continue to accrue at six percent (6%) per annum. In the event of a default by Defendant under this Judgment or the Settlement Agreement, (i) the amount of the Principal shall increase by $200,000, and (ii) all unpaid interest plus

1

attorney fees and expenses, both then outstanding and on an ongoing basis, will be added to the Principal and will then begin to accrue interest as of the date of the default.

2. (a) Defendant shall pay to Plaintiff the following amounts to be applied to the outstanding interest as of December 31, 2020, at the following times:

| | |
|---|---|
| $75,000 | February 28, 2021 |
| $37,500 | July 31, 2021 |
| $35,993.15 | January 31, 2022 |

(b) In addition, Defendant shall pay to Plaintiff, beginning February 28, 2021 (this payment for two months) and on the last day of each month thereafter until this Judgment is paid in full, interest on the Principal amount outstanding in the amount of ten thousand dollars ($10,000) per month.

3. Defendant's obligations under (i) the February 5, 2019 Secured Promissory Note and (ii) the February 5, 2019 Pledge Agreement both between Defendant and Plaintiff are hereby ratified and confirmed and modified only as set forth in the Settlement Agreement and this judgment.

4. The terms of the Settlement Agreement are incorporated into this Judgment.

**SO ORDERED**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 19, 2021

2

Stipulated and agreed as to form and content:

BODMAN PLC

SAUL EWING ARNSTEIN & LEHR LLP

/s/ Justin P. Bagdady
Justin P. Bagdady (P7964)
201 S. Division St., Suite 400
Ann Arbor, Michigan 48104
(734) 930-2727
jbagdady@bodmanlaw.com
*Attorneys for First State*

/s/ William T. "Toby" Eveland
William T. "Toby" Eveland (P81457)
Michael A. Jacobson (IL 63122)
161 N. Clark, Suite 4200
Chicago, IL 60601
(312) 876-7100
*Attorneys for William F. Weld*

3

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Agreement"), dated as of February 17, 2021 (the "Effective Date"), is entered into by and between William F. Weld ("Weld"), and First State Trust Company, as directed trustee of the Howard A. Acheson Trust FBO Michael H. Acheson UTA May 7, 1973 ("Lender"). Weld and Lender are sometimes referred to herein collectively as the "Parties", and each a "Party".

## RECITALS

WHEREAS, on or about February 5, 2019 the Parties entered into a $2,000,000 Secured Promissory Note from Weld to Lender and a Pledge Agreement by and between Weld and Lender. Concurrently, an Assent to Pledge Agreement was entered into by and between Weld and High Street Capital Partners, LLC, a Delaware limited liability company ("HSCP") (all of the above collectively, the "Loan Documents").

WHEREAS, pursuant to the Loan Documents, Weld pledged, inter alia, all of his present and future interest in HSCP held by him to Lender.

WHEREAS, certain HSCP units held by Weld have now vested and are immediately convertible into 360,107 Common Units of HSCP (the "Common Units").

WHEREAS, pursuant to the Third Amended and Restated Limited Liability Company Agreement of HSCP, the Common Units are convertible, in Weld's discretion, into certain shares of Acreage Holdings, Inc. ("Acreage").

WHEREAS, pursuant to an Amended Plan of Arrangement by and among Acreage and Canopy Growth Corporation (the "Amended Plan of Arrangement"), the Common Units are convertible, in Weld's discretion, into 108,032 Floating Shares and 252,075 Fixed Shares (each as defined in the Amended Plan of Arrangement) (together, the "Acreage Shares").

WHEREAS, Weld owns certain additional shares in Acreage, which are addressed in a side letter between the parties of even date herewith ("Side Letter").

WHEREAS, on June 18, 2020, Lender filed a complaint for damages against Weld in the United States District Court for the Eastern District of Michigan, Southern Division, which was assigned docket no. 2:20-cv-11612 (the "Michigan Litigation").

WHEREAS, on June 15, 2020, Weld filed a declaratory judgment complaint against HSCP in the Superior Court for the State of Delaware, which was assigned docket no. N20C-06-061 (the "Delaware Litigation").

WHEREAS, considering various business factors, including, but not limited to, the uncertainties of litigation, the Parties agree to settle their disputes on the terms below.

NOW, THEREFORE, in consideration of the payment and covenants set forth herein, the sufficiency of such consideration is heretofore agreed, the Parties agree as follows:

## I. ACREAGE SHARES

(a) <u>Account Control Agreement.</u> As of the Effective Date, the Parties will enter into the Account Control Agreement, attached hereto as <u>Exhibit A</u> (the "Account Control Agreement"), pursuant to which Wilmington Trust, National Association (the "Custodian") will establish a securities account (the "Account"). Weld shall be responsible for the payment of all fees and expenses associated with the Account Control Agreement, the Custodian and the Account. As to the Parties, in the event of any conflict between this Agreement and the Account Control Agreement, the terms of this Agreement shall control.

(b) <u>Conversion and Deposit of Acreage Shares</u>. Within 15 business days of the Effective Date, Weld shall take all actions necessary to (x) convert the C-1 Units into the Common Units, and the Common Units into the Acreage Shares (to the extent that such conversions have not occurred as of the Effective Date) and (y) have the Acreage Shares delivered to the Custodian and the Account as further contemplated by the Account Control Agreement. Any future interests in HSCP or Acreage obtained by Weld shall be delivered to the Custodian for deposit into the Account.

(c) <u>Outstanding Balance</u>. The Outstanding Balance shall be the total amount outstanding (including Principal, Interest and Expenses) owed by Weld to Lender at any time (the "Outstanding Balance"). As of December 31, 2020, the Outstanding Balance was equal to $2,257,923.50.

(d) For purposes of this Section:

$A$ = Number of Acreage Floating Shares (OTCQX: ACRDF) held in the Account or subject to the Side Letter (and unsold) as of such date

$B$ = Number of Acreage Fixed Shares (OTCQX: ACRHF) held in the Account or subject to the Side Letter (and unsold) as of such date

$C$ = Volume-weighted average closing price per share for the previous 5 days of the Acreage Floating Shares

$D$ = Volume-weighted average closing price per share for the previous 5 days of the Acreage Fixed Shares

$X$ = Value of Collateral

$Y$ = Outstanding Balance

$Z$ = The Outstanding Balance multiplied by 1.2.

2

(e)     *Calculation of Collateral*.  For all purposes of this Agreement, the value of the collateral (the "Collateral") shall be calculated as follows:

$X$ equals (A multiplied by C) plus (B multiplied by D)

(f)     *Control of Account Control Agreement*.

(1)     *Liquidation Threshold*. As further set forth in the Account Control Agreement, Weld shall maintain full and complete control of the Collateral (except upon the event of default as contemplated in this Agreement) for so long as (x) the liquidation threshold (the "Liquidation Threshold") has not been met and (y) Lender has not delivered notice as contemplated by Section I(f)(2). The Liquidation Threshold shall be deemed to have been met upon the occurrence of:

$X$ is greater than $Z$

(2)     *Lender Control*.

(i)     Notwithstanding the fact that Weld remains in good standing under the terms of this Agreement and is not in default hereunder, at any time after the Liquidation Threshold has been met, upon the occurrence of:

$X$ is less than $Y$

then, as further set forth in the Account Control Agreement, Lender may (but shall not be required to) deliver notice to the Custodian and to Weld in a form substantially similar to Exhibit B of the Account Control Agreement, pursuant to which Lender shall be deemed to have taken control of the Collateral and the Account.

(ii)     Weld shall have 3 business days to notify Lender and the Custodian that Weld objects to the transfer of control; provided, however, that Weld shall only be entitled to object on the grounds that Weld disagrees with the accuracy of the calculation set forth in Section I(f)(2)(i).

(iii)     For purposes of calculating the Outstanding Balance and any other amounts owed between the Parties, Lender shall be deemed to have sold all of the Acreage Shares in the Account as of the date on which Lender actually sells the Acreage Shares, unless Lender has not sold the shares within the ten day period following the date notice is delivered to the Custodian (the "Notice Date") in which case Lender shall be deemed to have sold the Acreage Shares as of the tenth day; provided, that Lender shall have no obligation to sell the Acreage Shares.

(A)     If as of the Notice Date, $X$ is less than $Y$, Weld shall be required to pay Lender any remaining Outstanding Balance pursuant to Section II(e), but shall not be required to make any other payments until such time.

3

       (B) If as of the Notice Date, X is greater than Y, Lender shall pay Weld an amount in immediately available funds equal to the difference within 10 business days of the Notice Date.

    (3) <u>Default by Weld</u>.

      (i) If at any time Weld is in default under any term of this Agreement, the Side Letter or the Account Control Agreement, including but not limited to by failing to make a timely payment, and remains in default for more than 5 business days after receiving Notice of being in default from Lender, Lender may (but shall not be required to) deliver notice to the Custodian and to Weld in a form substantially similar to <u>Exhibit B</u> to the Account Control Agreement, pursuant to which Lender shall be deemed to have taken control of the Collateral and the Account.

      (ii) If at any time Weld is or has been late in making any payments under <u>Section II</u> more than 3 times (to the extent that such late payment is not waived in advance by Lender), Weld's default under the Agreement shall not be subject to cure by Weld. Upon such occurrence, Lender may (but shall not be required to) deliver notice to the Custodian and to Weld in a form substantially similar to <u>Exhibit B</u> to the Account Control Agreement, pursuant to which Lender shall be deemed to have taken control of the Collateral and the Account.

      (iii) In the event of any uncured default (as contemplated by <u>Section I(f)(3)(i)</u>) or default (as contemplated by <u>Section I(f)(3)(ii)</u>), $200,000 shall be added to the outstanding Principal owed to Lender from Weld, interest on the Outstanding Balance shall accrue at the rate of 6% per annum, and Lender may pursue all remedies available for collection of the amount outstanding under the consent judgment entered in the Michigan Litigation in the form attached to this Agreement as <u>Exhibit C</u> ("Judgment").

      (iv) For purposes of calculating the Outstanding Balance and any other amounts owed between the Parties, Lender shall be deemed to have sold all of the Acreage Shares in the Account as of the date on which Lender actually sells the Acreage Shares, unless Lender has not sold the shares within ten days of the Notice Date, in which case Lender shall be deemed to have sold the Acreage Shares as of the tenth day provided, that Lender shall have no obligation to sell the Acreage Shares.

      (A) If as of the Notice Date, X is less than Y, Weld shall be required to pay Lender any remaining Outstanding Balance pursuant to <u>Section II(e)</u>, but shall not be required to make any other payments until such time.

      (B) If as of the Notice Date, X is greater than Y, Lender shall pay Weld an amount in cash equal to the difference within 10 business days of the Notice Date.

  (g) <u>Sale of Acreage Shares</u>. At any time that a Party is in control of the Collateral, such Party shall be entitled, in such Party's sole and absolute discretion, to sell any or all of the Acreage Shares; provided, however, that upon any sale, all monies received shall be paid as follows:

(1) First, to any interest that has accrued on the outstanding Principal pursuant to Section II(c);

(2) Second, to any Accrued Interest pursuant to Section II(b);

(3) Third, to any Principal outstanding pursuant to Section II(a);

(4) Fourth, to any Expenses outstanding pursuant to Section II(d); and

(5) Fifth, all remaining amounts shall be paid to Weld.

For any amounts paid pursuant to any of Sections I(g)(1) – (5), any such amounts paid shall be credited from the earliest amount owed to the most recent amount owed. Upon any sale of any of the Acreage Shares by a Party pursuant to this subsection, the selling Party shall notify the non-selling Party within 2 business days of any such sale. Such notice shall be in substantially the form set forth as Exhibit B attached hereto (each, a "Sale Notice").

## II. PAYMENTS BY WELD

(a) Principal. The Parties acknowledge and agree that the outstanding principal (the "Principal") balance due as of the Effective Date is $2,000,000.

(b) Accrued Interest.

(1) The Parties acknowledge and agree that the outstanding accrued interest on the Loan as of December 31, 2020 is $148,493.15 (the "Accrued Interest"). For so long as Weld is not in default under any term of this Agreement, no further interest shall accrue on the Accrued Interest.

(2) Weld shall make the following payments as satisfaction of the Accrued Interest:

(i) $75,000, no later than February 28, 2021;

(ii) $37,500, no later than July 31, 2021; and

(iii) $35,993.15, no later than January 31, 2022.

(c) Interest on the Outstanding Principal.

(1) Interest shall accrue on the outstanding Principal balance at a rate of 6.0% per annum beginning January 1, 2021.

(2) Weld shall make a payment of $10,000 as of the last day of each month, with the first payment due on February 28, 2021 (for two months), until such time as the Principal balance has been paid in full. For the avoidance of doubt, in the event of any additional payments beyond the amounts set forth in Section II(b), shall be credited first as payments towards Accrued Interest. If all Accrued Interest has been paid, then such additional payments by Weld shall be credited as a Principal payment.

(d)   Lender's Attorneys' Fees and Expenses.

(1)   The Parties acknowledge and agree that the attorneys' fees and third party expenses incurred by Lender as of the Effective Date is $109,430.35 (collectively, the "Expenses").

(2)   Weld shall pay the Expenses at the same time and in the same manner as he makes payment of the Principal; provided that any payments shall be first applied to the Expenses and then to Principal.

(3)   For so long as Weld is not in default under the terms of this Agreement, Weld shall not be liable for any additional attorneys' fees or third party expenses of Lender; provided, however, that if Weld is in default under the terms of this Agreement, Weld shall be liable for any such additional attorneys' fees or third party expenses incurred by Lender in connection therewith or with collection or enforcement of the Judgment or enforcement of the Loan Documents or this Agreement.

(e)   2022 Payments. In the event that any portion of the Outstanding Balance has not been paid in full by January 31, 2022, Weld shall make the following payments as satisfaction of the Outstanding Balance:

(1)   1/4th of the Outstanding Balance, plus any interest accrued thereon, no later than January 31, 2022;

(2)   1/4th of the Outstanding Balance, plus any interest accrued thereon, no later than February 28, 2022;

(3)   1/4th of the Outstanding Balance, plus any interest accrued thereon, no later than March 31, 2022; and

(4)   1/4th of the Outstanding Balance, plus any interest accrued thereon, no later than April 30, 2022.

### III.   MUTUAL RELEASE

(a)   Mutual Release.

(1)   Lender's Release of Claims. Except as set forth in this Agreement, the Judgment, and the Loan Documents, and effective immediately on the execution of this Agreement, Lender, for itself, its officers, directors, members, and all of their respective successors, predecessors, executors, heirs, beneficiaries, trustees, administrators, attorneys, representatives, managers, shareholders, officers, directors, partners and members, and assigns ("Lender Releasing Parties") hereby release, acquit and discharge, to the fullest extent permitted by applicable law, Weld, his heirs, beneficiaries, executors, trustees, administrators, attorneys, agents, representatives, and assigns ("Weld Released Parties"), from any and all manner of actions, claims, counterclaims, demands, suits, damages, defenses, setoffs, or other assertions, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect (collectively, "Claims"), that the Lender Releasing Parties ever had, now have, or may have against the Weld

Released Parties, which were or could have been asserted prior to the Effective Date, including, without limitation, Claims that were or could have been asserted in connection with the Michigan Litigation.

(2) Weld's Release of Claims. Except as set forth in this Agreement, and effective immediately on the execution of this Agreement, Weld, his heirs, beneficiaries, executors, trustees, administrators, attorneys, agents, representatives, and assigns ("Weld Releasing Parties") hereby release, acquit and discharge, to the fullest extent permitted by applicable law, Lender, for itself, its officers, directors, members, and all of their respective successors, predecessors, executors, heirs, beneficiaries, trustees, administrators, attorneys, representatives, managers, shareholders, officers, directors, partners and members, and assigns ("Lender Released Parties"), from any and all manner of actions, claims, counterclaims, demands, suits, damages, defenses, setoffs, or other assertions, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect (collectively, "Claims"), that the Weld Releasing Parties ever had, now have, or may have against the Lender Released Parties, which were or could have been asserted prior to the Effective Date, including, without limitation, Counterclaims that were or could have been asserted in connection with the Michigan Litigation.

(b) Dismissal. Within 5 business day following the execution of this Agreement by the Parties, (a) the Parties shall file a consent judgment in the Michigan Litigation in the form attached to this Agreement as Exhibit C; (b) the Parties shall file a notice of dismissal of Weld's counterclaim in the Michigan Litigation in the form attached to this Agreement as Exhibit D; and (c) Weld shall file a notice of dismissal in the Delaware Litigation in the form attached to this Agreement as Exhibit E.

## IV. NOTICES

(a) All notices or other communications which are required or permitted hereunder or under the Account Control Agreement (including but not limited to notices required pursuant to Section I necessary to establish a Notice Date) shall be in writing and be sufficient if (1) actually received, (2) delivered personally, (3) sent by certified mail, postage prepaid, (4) sent by overnight courier with a nationally registered courier with charged paid by sender or (5) sent via email, as follows:

If to Weld:

William F. Weld
151 Green Street
Canton, Massachusetts 02021-1032
Email: bweld@mintz.com

with a copy (which shall not constitute notice) to:

Saul Ewing Arnstein & Lehr LLP
131 Dartmouth Street
Suite 501
Boston, Massachusetts 02116

Attn:  Jeffrey S. Robbins, Esq.
Email: jeffrey.robbins@saul.com

If to Lender:

First State Trust Company
1 Righter Parkway, Suite 120
Wilmington, DE 19803
Attn: Keith Al-Chokhachy
Email: Keith.al-chokhachy@fs-trust.com

and also to:

Michael Acheson
Interlaken Capital LLC
261 E. Maple Road
Birmingham, MI 48009
Email: Macheson@me.com

with a copy (which shall not constitute notice) to:

Bodman PLC
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Attn:  Ralph E. McDowell, Esq.
Email: rmcdowell@bodmanlaw.com

## V.   CONFIDENTIALITY

Each of the Parties agrees and understands the terms of the Agreement shall remain confidential and shall not be disclosed to any other person or entity except to each Party's respective attorneys, accountants and tax preparers, and the Custodian, unless required to disclose such payment by a court of competent jurisdiction or as otherwise required by law.

## VI.   LOAN DOCUMENTS

The Loan Documents remain in full force and effect other than as modified in this Agreement and the parties agree and acknowledge that each of the Loan Documents is ratified and confirmed, and is a valid, binding, enforceable agreement.

## VII.   GOVERNING LAW; JURISDICTION

The Agreement shall be governed by the laws of the State of Delaware. The Parties hereto agree that the exclusive venue for any disputes arising under or relating to the Agreement shall be the federal and state courts of the State of Michigan.

THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN RESPECT OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR OTHER PROCEEDING BROUGHT BY ANY PARTY OR PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR RELATED TO THIS AGREEMENT OR ANY PORTION THEREOF.

## VIII.   CONSTRUCTION; INTEGRATION; AMENDMENT

This Agreement has been voluntarily signed by the Parties after advice and counsel by their respective attorneys. The Parties understand that the language of all parts of the Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party. Should a court determine any part, term or provision of the Agreement to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement. Other than as to the Judgment, Loan Documents, and the Account Control Agreement, this Agreement sets forth the entire understanding and agreement between the Parties hereto, fully supersedes any and all prior agreements or understandings alleged to have been made, and shall not be modified by any verbal statement made or attributed to the Parties subsequent hereto. This Agreement may be amended only by a writing duly executed by all Parties as indicated below and is intended and understood to be binding upon all officers, directors, stockholders, members, subsidiaries, partners, affiliates, joint venturers, predecessors, agents, successors and assigns of each Party, as applicable.

[The Remainder of this Page Intentionally Left Blank]

The Parties hereto acknowledge that they have read the Agreement and understand and voluntarily agree with its terms.

**WELD:**

*/s/ William F. Weld*

William F. Weld

**LENDER:**

First State Trust Company, as directed trustee of the Howard A. Acheson Trust FBO Michael H. Acheson UTA May 7, 1973

By:_____
Name: Keith Al-Chokhachy
Title:   Vice President

The Parties hereto acknowledge that they have read the Agreement and understand and voluntarily agree with its terms.

**WELD:**

_____
William F. Weld

**LENDER:**

First State Trust Company, as directed trustee
of the Howard A. Acheson Trust FBO
Michael H. Acheson UTA May 7, 1973

Keith M. Al-Chokhachy, CFP®, CTFA

Vice President/Trust Officer

By: _____
Name: Keith Al-Chokhachy
Title:  Vice President

William F. Weld
151 Green Street
Canton, Massachusetts 02021-1032

First State Trust Company
1 Righter Parkway, Suite 120
Wilmington, DE 19803

February 17, 2021

**Re:   Liquidation of Acreage Shares Held by Global Shares**

Ladies and Gentlemen:

This letter agreement acknowledges that William F. Weld ("Weld") and First State Trust Company, as directed trustee of the Howard A. Acheson Trust FBO Michael H. Acheson UTA May 7, 1973 ("Lender," and together with Weld, the "Parties") have entered into, inter alia, a Settlement Agreement dated the date hereof (the "Settlement Agreement"). Capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

This letter agreement further acknowledges that the Parties have issued an Instruction Letter dated the date hereof (the "Instruction Letter") to Acreage and Global Shares, pursuant to which Lender has authorized Global Shares and Acreage to allow Weld to liquidate 47,230 shares of Acreage Fixed Shares and 20,242 shares of Acreage Floating Shares owned by Weld (collectively, the "Shares"). The proceeds of the sale of the Shares shall be distributed between the Parties as set forth herein.

Weld shall liquidate the Shares on the following schedule:

1. 7,872 Fixed Shares and 3,374 Floating Shares on February 24, 2021;

2. 7,872 Fixed Shares and 3,374 Floating Shares on March 1, 2021;

3. 7,872 Fixed Shares and 3,374 Floating Shares on March 8, 2021;

4. 7,872 Fixed Shares and 3,374 Floating Shares on March 15, 2021;

5. 7,872 Fixed Shares and 3,374 Floating Shares on March 22, 2021; and

6. All remaining Shares on March 29, 2021.

38021149.9 02/17/2021

Notwithstanding the foregoing schedule, Weld shall be entitled to liquidate all or any portion of the Shares earlier than the dates set forth above, in his sole discretion.

The Parties agree that Weld will wire the first $350,000 of the proceeds to Lender in accordance with the wire instructions attached as Exhibit A. The Parties agree that Weld will be entitled to keep the next $58,000 of the proceeds received. The Parties agree that Weld will wire the remainder of the proceeds to Lender in accordance with the wire instructions attached as Exhibit A. Weld shall (x) provide evidence to Lender of the terms of each sale and (y) initiate each wire to Lender within 3 business days of any proceeds being received in his bank account, and the failure to do so shall constitute a default under the Settlement Agreement.

The Parties acknowledge and agree that any funds received by Lender pursuant to the liquidation contemplated by the Instruction Letter shall be designated as payments pursuant to the Settlement Agreement. For the avoidance of doubt, any amounts received by Lender shall be designated as payments in the following order of priority:

a. The first $148,493.15 shall be designated as payment of the Accrued Interest contemplated in Section II(b)(2) of the Settlement Agreement;

b. The next $120,000 shall be designated as payment of the interest on the Outstanding Principal contemplated in Section II(c) of the Settlement Agreement for all of calendar year 2021;

c. The next funds available, if any, shall be designated as payment of the Expenses contemplated in Section II(d) of the Settlement Agreement; and

d. Any remaining funds, if any, shall be designated as payment on the outstanding Principal.

Notwithstanding the foregoing, provided Weld has liquidated the shares in accordance with this letter agreement, until March 31, 2021, no default under the Settlement Agreement shall be deemed to have occurred by Weld in connection with the payment required in the Settlement Agreement on February 28, 2021 (i.e., a total of $95,000). For the avoidance of doubt, the prior sentence shall not otherwise affect any other event of default under the Settlement Agreement.

This letter agreement shall not be deemed to otherwise affect the rights, responsibilities or obligations of either of the Parties under the Settlement Agreement or any other agreement or understanding between the Parties.

This letter agreement shall be governed by the laws of the State of Delaware. The Parties hereto agree that the exclusive venue for any disputes arising under or relating to this letter agreement shall be the federal and state courts of the State of Michigan.

The undersigned hereby execute and deliver this letter agreement as of the date first set forth above.

*William F. Weld*

_____
William F. Weld


**ACKNOWLEDGED AND AGREED:**

First State Trust Company, as directed trustee of the
Howard A. Acheson Trust FBO Michael H. Acheson
UTA May 7, 1973


_____
Name: Keith Al-Chokhachy
Its:    Vice President

The undersigned hereby execute and deliver this letter agreement as of the date first set forth above.

_____
William F. Weld

**ACKNOWLEDGED AND AGREED:**

First State Trust Company, as directed trustee of the
Howard A. Acheson Trust FBO Michael H. Acheson
UTA May 7, 1973

_____
Name: Keith Al-Chokhachy
Its:    Vice President